UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION - BAY CITY

IN RE:

MICHAEL J. METZLER                              Case No. 07-22592-dob
& SHERYL A. METZLER,                    Chapter 7 Proceeding
                                                                              Hon. Daniel S. Opperman

                 Debtors.
_____/

## OPINION REGARDING CHEMICAL BANK'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY

Before the Court is a motion for relief from the automatic stay with regard to a 1998 Pro-Line boat. The motion is brought by creditor Chemical Bank and Trust Company ("Creditor" or "Chemical Bank"), which purports to hold a preferred mortgage interest in the boat. Creditor's motion is opposed by the Chapter 7 Trustee, Daniel Himmelspach ("Trustee"), who argues that the Creditor's interest is not properly perfected.

The parties stipulating to all other relevant factual and legal issues for the purpose of this ruling, the matter turns on the following legal question: whether compliance with the marking requirement of 46 C.F.R. § 67.121 is a condition for obtaining a preferred mortgage under the Ship Mortgage Act, 46 U.S.C. § 31301, *et seq.*?

### JURISDICTION

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(a) and 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (G), and (K).

### BACKGROUND

On November 1, 2004, in exchange for a $70,000.00 loan, Michael J. Metzler, executed a note, disclosure and security agreement (the "Note and Security Agreement") in favor of Chemical Bank. (Dkt. # 23, Exh. D). These documents created a security interest in favor of

-1-

Chemical Bank in Metzler's 1998 Pro-Line 3250 Express, Serial No. PLCMAO41H798, known as the "Hammer Slammer II" (the "Boat"). A mortgage (the "Mortgage") referencing Chemical Bank's interest in the Boat was executed on the same day. (Dkt. # 23, Exh. E). These documents recited that Michael J. Metzler was the sole owner of the Boat. Chemical Bank caused the Mortgage as well as the Note and Security Agreement to be filed with the United States Coast Guard's National Vessel Documentation Center on November 4, 2004.

Sometime after these documents had been filed with the National Vessel Documentation Center, Michael J. Metzler attempted to transfer title to the Boat to his wife, Sheryl A. Metzler.[1] (*See* Dkt. # 29, Exh. # 1). Sheryl Metzler submitted an application for a Michigan Watercraft Title regarding the Boat. (Id.) On June 9, 2005, a Michigan Watercraft Certificate of Title was issued naming Sheryl Ann Metzler as the owner and reciting that there were no secured interests of record. (Dkt. # 29, Exh. # 2).

On October 3, 2007, Michael and Sheryl Metzler filed their Chapter 7 Voluntary Petition. Schedule B lists a "34' Proline Boat" as property of Sheryl Metzler, and Schedule D lists an unsecured debt owing by Michael Metzler to Chemical Bank for a "34' Proline" with an accompanying note stating "improperly perfected lien." At the time of filing, Chemical Bank was owed approximately $62,347.98,[2] and the value of the Boat was estimated to be approximately $60,000.00. (Dkt. # 25, ¶¶ 8-9).

On January 18, 2008, Chemical Bank brought the instant motion, seeking relief from the automatic stay with regard to the Boat pursuant to section 362(d)(1) of the Bankruptcy Code. Trustee filed a response in opposition to the motion arguing that the Boat was not a "documented vessel" and therefore the mortgage held by Chemical Bank was not a valid preferred mortgage and could be avoided under section 544 of the Bankruptcy Code. Both parties filed briefs in support of their pleadings.[3]

A hearing was held on February 14, 2008. Both parties agreed that the legal issue, whether compliance with the marking requirement of 46 C.F.R. § 67.121 is a condition for

---

[1] The date of this attempted transfer is unknown because the title transfer document is not dated.
[2] This figure was comprised of principal in the amount of $61,652.84, interest in the amount of $665.09, and late fees of $30.05.
[3] Debtors did not file any pleading regarding Chemical Bank's motion and expressed an intention to surrender the Boat in a pleading accompanying their Petition. (*See* Dkt. # 7).

obtaining a preferred mortgage, if decided in the negative, would entitle Chemical Bank to the relief it requests. Therefore, the Court informed the parties that it would provide this opinion regarding the legal issue prior to holding an evidentiary hearing on whether the existing marking would be sufficient under the regulation.

*DISCUSSION*

*I.*

In 1920, the Ship Mortgage Act was enacted to encourage investment in the post-war shipping industry by improving lenders' mortgage security. *See*, *Associated Metals & Minerals Corp. v. Alexander's Unity MV*, 41 F.3d 1007, 1011 (5th Cir. 1995); *All Alaskan Seafoods v. M/V Sea Producer*, 882 F.2d 425, 428 (9th Cir. 1989); J. Bond Smith, Jr., *Ship Mortgages*, 47 Tul. L. Rev. 608, 608-09 (1973). The Act aimed to remedy what had previously been "practically worthless" mortgage security on ships by creating a mortgage that would be "'good except as to certain demands that should be superior to everything else, such as wages[.]'" *Detroit Trust Co. v. The Thomas Barlum*, 293 U.S. 21, 39 (1934) (quoting Sen. Rep. No. 573, 66th Cong., 2d sess., p. 9). "The Act itself did at least three important things -- it set forth the requirements for recording preferred mortgages, established that only maritime liens would have priority over ship mortgages, and provided for a means of enforcing preferred mortgage liens in admiralty." *Dietrich v. Key Bank, N.A.*, 72 F.3d 1509, 1513 (11th Cir. 1996). Once a ship has been federally documented, federal law determines the validity of all security interests. *Maryland National Bank v. The Vessel Madam Chapel*, 46 F.3d 895, 900 (9th Cir. 1995) (citing *In re Alberto*, 823 F.2d 712, 716 (3rd Cir. 1987)).

The Ship Mortgage Act, in its current form, is found at 46 U.S.C. §§ 31301-31343. Under the Act, a preferred mortgage lien "has priority over all claims against the vessel (except for expenses and fees allowed by the court, costs imposed by the court, and preferred maritime liens)[.]" 46 U.S.C. § 31326(b)(1).

To qualify as a preferred mortgage, a mortgage must: (1) include the complete vessel; (2) be filed in substantial compliance with filing requirements; and (3) cover a documented vessel or one for which an application for documentation has been filed. 46 U.S.C. § 31322(a). In this

matter, there is no dispute between the parties that the first two requisites are satisfied. The mortgage includes the whole of the Boat, and all necessary documents were filed in substantial compliance with the requirements of 46 U.S.C. § 31321(b). The only dispute between the parties is as to the third, that the mortgage covers a documented vessel.

*II.*

Trustee argues that the Boat was not a "documented vessel" so as to be eligible for a preferred mortgage. The regulations define a documented vessel as "a vessel which is the subject of a valid Certificate of Documentation." 46 C.F.R. § 67.3. The regulations go on to explain that "[a] Certificate of Documentation is required for the operation of a vessel in certain trades, serves as evidence of vessel nationality, and permits a vessel to be subject to preferred mortgages." *Id.*, § 67.1. Aside from arguing that 46 C.F.R. § 67.121 was not complied with and therefore the Boat is not a documented vessel, Trustee does not otherwise challenge the validity of the Certificate of Documentation covering the Boat.[4]

46 C.F.R. § 67.121 requires that a vessel's official number be affixed in a specific form and manner to a "clearly visible interior structural part of the hull." The regulation falls under Subpart I, "Marking Requirements for Vessel Documentation." The general requirement of this subpart, set forth in § 67.120 provides: "No Certificate of Documentation issued under this part will be deemed valid for operation of the vessel until the vessel is marked in accordance with this subpart." On its face, the plain meaning of this general requirement appears to be that the Certificate of Documentation will not be valid for purposes of *operating* the vessel if it is not properly marked.

Such a reading is reinforced by the Discussion of Comments and Changes that accompanied the final rule when it was published in Documentation of Vessels; Recording of Instruments; Fees, 58 Fed. Reg. 60256 (Dep't Transp. Nov. 15, 1993). Explaining the reasons for the changes to the rule initially proposed, the Coast Guard explained:

> Several persons objected to the provision of § 67.120 which would have deemed vessel documents invalid until the vessel was properly marked with its name, hailing port, and

---

[4]Trustee attached a photocopy of the Certificate of Documentation to his brief. (*See* Dkt. # 29, Exh. # 2).

-4-

official number, noting that such a provision would give rise to questions about the efficacy of a mortgage filed to evidence a security interest in the vessel. The section has been corrected to provide that the vessel's document will not be valid for operation until it is marked in accordance with the regulations found elsewhere in subpart I.

58 FR 60256, 60260. This explanation delineates clearly that the regulation relates to exactly what it says, *operation* of a vessel; not the efficacy of a mortgage on a vessel as the Trustee argues.

Other courts examining this issue have reached the same conclusion. In *Maryland National Bank v. The Vessel Madam Chapel*, 46 F.3d 895, 900-901 (9th Cir. 1995), the Ninth Circuit Court of Appeals found that "[t]he marking of a vessel is not a condition for obtaining a preferred mortgage; rather, it is the filing of a certificate that is required." The court went on to explain: "the [Ship Mortgage] Act imposes the duty of marking on the vessel's owner; the Act does not impose, and we decline to create, a requirement that a lender track down a vessel to see that it has actually been properly marked."[5] *Id.* at 901.

In the twelve years since the *Madam Chapel* decision, there has been no statutory or regulatory amendment creating such a requirement on the part of a lender. Moreover, so far as this Court is aware, there has been no judicial decision finding such a requirement. As the Trustee has not pointed to any other source for such a requirement apart from 46 C.F.R. § 67.121, this Court is unable to find such a requirement exists.

The Court also analogizes the facts of the instant case to cases where the State of Michigan fails to note the security interest on a motor vehicle Certificate of Title despite all necessary efforts of a creditor to perfect its security interest. In such cases, Bankruptcy Courts have routinely held that absent culpable action or specific knowledge by a creditor, the creditor enjoys a perfected security interest even though that creditor's security interest was not noted on the Certificate of Title. *See In re Gilbert*, 82 L.B.R. 456 (Bankr. E.D. Mich. 1988); *In re King*, No. 06-41128, slip. op. at 4-5 (Bankr. E.D. Mich. Jan. 3, 2007).

---

[5] In reaching its conclusion the *Madam Chapel* Court cited to *Benedict on Admiralty*, which relied upon the Coast Guard's explanation of changes in the final rules draft discussed above to conclude that "[t]he marking of a vessel is not a condition to obtaining a preferred mortgage under the statute." *Benedict on Admiralty* § 68 n. 47.

-5-

The Court expressed the concern at oral argument that third parties would not know whether to check either the federal or state records to confirm the status of a mortgage or secured interest in a vessel. In response to this inquiry, counsel for Chemical Bank and the Trustee agreed that federal law applies if the vessel has a five (5) ton or greater displacement. Counsel also agreed that most vessels would need to be at least 26 feet long in order to displace five (5) tons. The size of the effected vessel, therefore, places any third party on notice that federal law may apply.

Moreover, counsel for Chemical Bank noted that any third party should check both sets of records, much like a third party who either checks state and local UCC records or multiple state UCC records to confirm the status of liens on personal property. The Court finds this response persuasive; the vessels in question are large and therefore easily identifiable and the burden of checking federal and state records is minimal given the amount in issue.

The above reasons convince the Court that Chemical Bank's mortgage was not affected by any potential non-compliance with 46 C.F.R. § 67.121. Therefore, as the Trustee otherwise concedes that the mortgage would be a valid preferred mortgage, the Court finds that it is indeed a valid preferred mortgage under the Ship Mortgage Act.

### *III.*

Chemical Bank requests relief from the automatic stay pursuant to section 362(d)(1) of the Bankruptcy Code. That section provides that, after notice and a hearing, the Court shall grant relief from the automatic stay "for cause, including the lack of adequate protection of an interest in property of such party in interest." The Bankruptcy Code does not define the term "cause" as it is used in section 362(d)(1), and therefore courts must make a case-by-case determination of whether relief is appropriate. *Laguna Associates Limited Partnership. v. Aetna Casualty & Surety Co. (In re Laguna Assocs. Ltd. Pshp.)*, 30 F.3d 734, 737 (6th Cir. 1994).

In this matter, Debtors ceased making payments to Chemical Bank upon the filing of their petition. (Dkt. # 25, ¶ 6). At the time Chemical Bank filed its motion, the boat was worth approximately $60,000.00 and such value was diminishing with age. (Id. ¶¶ 9-10). Chemical Bank was owed $62,347.98 at that time. (Id. ¶ 8). These facts being undisputed, it is clear to this

Court that Chemical Bank lacks adequate protection and cause exists to modify the automatic stay so as to allow Chemical Bank to proceed against the Boat.

The Court will enter an Order consistent with this Opinion.

**Signed on March 03, 2008**

                                        **/s/ Daniel S. Opperman**
                                   **Daniel S. Opperman**
                                   **United States Bankruptcy Judge**

-7-

07-22592-dob    Doc 30    Filed 03/03/08    Entered 03/03/08 16:24:41    Page 7 of 7